UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

ELEANOR LOUISE GENTILE,

                         Plaintiff,

            -vs-                      **No. 1:13-CV-01009 (MAT)**
                                      **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                         Defendant.

───────────────────────────────

## I.    Introduction

     Represented by counsel, Eleanor Louise Gentile ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

## II.  Procedural History

     The record reveals that in March 2011, plaintiff (d/o/b March 19, 1970) applied for DIB and SSI, alleging disability as of January 1, 2010. After her application was denied, plaintiff requested a hearing, which was held before administrative law judge Brian Kane ("the ALJ") on May 31, 2012. The ALJ issued an

unfavorable decision on July 20, 2012. The Appeals Council denied review of that decision and this timely action followed.

## III. The ALJ's Decision

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. Initially, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: myofascial pain, degenerative disc disease of the lumbar spine, and bilateral shoulder pain of unknown origin. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. The ALJ determined that plaintiff's medically determinable impairments of depression and anxiety were not severe. Nevertheless, in considering the paragraph B criteria, see 20 C.F.R. § 404 Subpart P, App. 1 § 12.00, the ALJ found that plaintiff had mild restrictions in activities of daily living ("ADLs"), social functioning, and concentration, persistence, or pace.

Before proceeding to step four, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to

2

perform light work with lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; she could sit for about six hours in an in an eight-hour workday; she could stand and/or walk for up to two hours total in an in an eight-hour workday; she could occasionally operate foot controls with both feet and reach in all directions; she could occasionally finger, feel, climb, balance, stoop, crouch, crawl, work at unprotected heights, operate a motor vehicle, and work in humidity/wetness; she could occasionally work in atmospheric conditions, extreme cold, extreme heat, and vibrations; she could work in moderate noise levels; she could use judgment and could understand, remember, and carry out simple instructions; she could deal with changes in a work setting; and although she would be off-task at times, which could be accommodated with normal breaks.

After finding that plaintiff could not perform any past relevant work, the ALJ found that considering plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy which plaintiff could perform. Accordingly, he found that she was not disabled.

## IV.  Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also

3

Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003).
"Substantial evidence means 'such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion.'" Shaw v.
Chater, 221 F.3d 126, 131 (2d Cir. 2000).

### A.   RFC; Weight Given to Medical Source Opinions

Plaintiff contends that the ALJ's physical RFC finding was
unsupported by substantial evidence,[1] arguing that there is no
medical source opinion which supports the limitations found by the
ALJ. In coming to his RFC finding, the ALJ gave great weight to
medical source opinions from Drs. Zair Fishkin and Harbinder Toor.
The ALJ gave little weight to two opinions from Scott Taylor, P.A.
("PA Taylor"), finding that he was an "other source," and not an
"acceptable medical source," under the regulations. T. 20 (citing
SSR 06-3p).

Plaintiff argues that the ALJ failed to properly follow the
treating physician rule regarding PA Taylor's opinions, because
those opinions were actually issued jointly by PA Taylor and
Dr. Qutubuddin Dar, plaintiff's treating physician. The
Commissioner concedes that these opinions were issued jointly by
PA Taylor and Dr. Tar. Doc. 14-1 at 20. The two "opinions,"
however, were actually treatment notes dated April 5 and 9, 2010.
The April 5 treatment note states that, secondary to a work-related

---

[1] Plaintiff does not challenge the ALJ's findings regarding
her mental impairments.

fall, Dr. Tar limited plaintiff's "work to no lifting greater than [five pounds] for [one] month." T. 473. On April 9, that restriction was extended through May 10, 2010. It is therefore apparent from these treatment notes that they refer only to an approximate one-month period.

In addition to noting that PA Taylor was not an acceptable medical source under the regulations, the ALJ found that the five-pound lifting restriction was inconsistent with the record regarding plaintiff's ADLs, which "included cleaning and moving furniture." T. 20. The ALJ also concluded that the restriction was "not consistent with treatment records showing no clinical findings other than tenderness." T. 20. The ALJ did not acknowledge that Dr. Tar, plaintiff's treating physician, had also signed the treatment notes. Despite that failure, however, the Court finds that any error in the application of the treating physician rule to these "opinions" was harmless. See Ryan v. Astrue, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) ("Other courts have found harmless error where the ALJ failed to afford weight to a treating physician when an analysis of weight by the ALJ would not have affected the outcome.") (citing Jones v. Barnhart, 2003 WL 941722, *10 (S.D.N.Y. Mar. 7, 2003); Walzer v. Chater, 1995 WL 791963, *9 (S.D.N.Y. Sept. 26, 1995)).

Although the treating physician rule requires controlling weight to be given to a treating source's opinion where that

opinion "is well-supported by clinical and diagnostic techniques and not inconsistent with other evidence in the record," see Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 416.927(c)(2), here, the opinions at issue addressed only a one-month period. The record does not indicate that the lifting restriction found in these treatment notes persisted beyond May 10, 2010, and therefore these notes do not support a finding of disability in any event. See 32 U.S.C. § 423(d) (requiring claimant to demonstrate disability for period of at least 12 months). The work-related restriction imposed in these notes is by its very nature temporary, and therefore even if given controlling weight, these notes would not have, in themselves, justified a finding of disability.

The ALJ gave significant weight to the May 2011 consulting opinion of state agency consulting examiner Dr. Harbinder Toor. Upon examination by Dr. Toor, plaintiff appeared in no acute distress, was able to rise from a chair with no difficulty, needed no help changing for the exam, and demonstrated a normal gait, full stance, normal stance, and heel-toe walk. Plaintiff declined to lay down on the examination table due to her report of back pain. Musculoskeletal examination showed decreased range of motion of the lumbar spine and tenderness of the thoracic spine, but a normal cervical spine; no scoliosis, kyphosis, or abnormality of the thoracic spine; full range of motion of the shoulders, elbows,

forearms, wrists, hips, knees, and ankles; no evidence
sublaxations, contractures, ankylosis, or thickening; stable
joints; and no redness, heat, swelling, or effusion. Plaintiff
declined to perform the straight leg raise ("SLR") test. The
remainder of plaintiff's physical exam was normal.

Dr. Toor opined that plaintiff had "moderate to severe
limitation for bending, heavy lifting, and twisting of the
thoracolumbar spine" and "moderate limitation for sitting, walking,
or standing a long time." T. 551. He also stated that "[p]ain
interfere[d] with her daily physical routine." Id. In giving
significant weight to this opinion, the ALJ noted that it was
consistent with Dr. Toor's examination, "which showed only
decreased range of motion of her lumbar spine,"; plaintiff's
activities of daily living; and Dr. Fishkin's opinion. In
accordance with Dr. Toor's opinion, the ALJ's RFC finding
incorporated sitting, standing, lifting, and stooping limitations.

In May 2010, Dr. Fishkin examined plaintiff in connection with
a workers compensation claim. He reviewed a lumbar MRI and noted
that it showed L5-S1 degenerative disc disease with small posterior
central focal disc protrusion. He also reviewed X-rays of the
thoracic spine which showed minimal compression deformity at the T5
vertebral body. On physical examination, plaintiff exhibited
limited range of motion in the cervical and lumbar spine; full
strength of all extremities; and a negative SLR test. Dr. Fishkin

opined that plaintiff had a "mild temporary disability" resulting in a lifting restriction of no more than 10-20 pounds and no repetitive bending. The ALJ gave great weight to this opinion, and incorporated a similar lifting restriction into his RFC finding.

In April 2011, Dr. Fishkin again examined plaintiff, but at that time found that she had no disability or restrictions whatsoever. The ALJ gave little weight to this opinion, finding that it was inconsistent with the medical evidence, "which showed no improvement in [plaintiff's] complaints or physical examination." T. 20.

The ALJ's decision to assign great weight to the opinions of Drs. Toor and Fishkin is supported by substantial evidence in the record. Although Dr. Tar did not supply a functional assessment of plaintiff's limitations, treatment notes from Dr. Tar are contained within the record. Plaintiff argues that because the treatment notes occasionally reference findings of decreased range of motion and spasm, the ALJ's emphasis on tenderness as her primary clinical finding was erroneous. However, a full reading of the record reveals that over a continuous treatment period from July 2008 through April 2010, the most consistent finding in plaintiff's physical examinations was that of tenderness of the spine. See T. 20; T. 338-39, 454, 463, 591, 596, 599. Over that time period, she consistently presented as having an otherwise normal physical examination. As discussed above, the greatest work-related

8

restriction noted by Dr. Tar was an approximate one-month limitation on lifting. Thus, although the ALJ was technically incorrect in stating that plaintiff's "only" clinical finding was tenderness,[2] his overall assessment of the medical record was sound.

The Court therefore finds that the ALJ's RFC finding was consistent with the consulting opinions of Drs. Toor and Fishkin, and it was consistent with the record as a whole, including ample records of plaintiff's treatment. The ALJ properly weighed the medical opinions and his RFC finding was supported by substantial evidence. See, e.g., Zervas v. Barnhart, 2007 WL 1229312, *6 (E.D.N.Y. Apr. 26, 2007) ("[I]t is clear that a consulting physician's opinion regarding a claimant's RFC may constitute substantial evidence.").

**B.    Failure to Develop the Record**

Plaintiff contends that the ALJ failed in his duty to fully develop the record. Although plaintiff's treating physicians did not provide functional assessments of plaintiff's capabilities, the record contains a complete record of plaintiff's treatment. Additionally, consulting sources provided functional assessments regarding plaintiff's physical impairments. In responding to plaintiff's argument that the ALJ should have re-contacted Dr. Toor

---

[2] The ALJ did note, however, that imaging studies showed a small disc protrusion and mild degenerative changes in plaintiff's lumbosacral spine. T. 18.

and requested a functional assessment, the Commissioner points to the regulations, which were "modified shortly prior to the ALJ's decision in order to permit greater flexibility in recontacting treating sources." Doc. 14-1 at 23 (citing 77 Fed. Reg. 10,651-01, which amended 20 C.F.R. §§ 404.1512(e), 416.912(e) [amendments effective March 26, 2012]).

The regulations require the ALJ to request opinion evidence from treating sources as to the functional limitations imposed by a claimant's medically determinable impairments. See Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) ("[B]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.") (quoting 20 C.F.R. § 404.1512(d)); see also Robins v. Astrue, 2011 WL 2446371, *3 (E.D.N.Y. June 15, 2011) ("Although the regulation provides that the lack of such a statement will not render a report incomplete, it nevertheless promises that the Commissioner will request one.").

Although the ALJ has a duty to request functional assessments from a plaintiff's treating physicians, according to the Second Circuit, "remand is not always required when an ALJ fails in his duty to request opinions, particularly where . . . the record contains sufficient evidence from which an ALJ can assess the

petitioner's residual functional capacity." <u>Tankisi v. Comm'r of Soc. Sec.</u>, 521 F. App'x 29, 34 (2d Cir. 2013) (noting that the text of 20 C.F.R. §§ 404.1513(b)(6) and 416.913(b)(6) "indicates that '[m]edical reports *should* include . . . [a] statement about what you can still do despite your impairment,' not that they *must* include such statements") (emphasis in original).

Here, like in <u>Tankiski</u>, the record was complete despite the ALJ's apparent failure to request a functional assessment from a treating physician. Although the record lacks such a functional assessment, the record includes thorough treatment notes. It also includes consulting examinations which, as discussed above, were consistent with the treatment notes and provided substantial evidence upon which the ALJ based his RFC finding. Under these circumstances, therefore, "it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity." <u>Tankisi</u>, 521 F. App'x at 34; see also <u>Pellam v. Astrue</u>, 508 F. App'x 87, 89-90 (2d Cir. 2013) (holding that ALJ had no duty to contact treating source for statement, even where ALJ had *no* opinions from treating sources, where ALJ's RFC finding was consistent consulting examiner's findings) ; <u>Lowry v. Astrue</u>, 474 F. App'x 801, 804 (2d Cir. 2012) (summary order); <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

### C.    Credibility

Plaintiff contends that the ALJ erroneously assessed her credibility. The ALJ's credibility assessment, however, reflects a thorough review of the record, including the objective medical evidence as well as plaintiff's subjective complaints regarding her symptoms.  The ALJ's discussion reflects a proper application of the two-step credibility process laid out in the regulations, see 20 C.F.R. § 404.1529, and cites other relevant authorities. T. 18 (citing 20 C.F.R. §§ 1527, 416.927; SSRs 96-2p, 96-5p, 96-6p, 06-3p); see Britt v. Astrue, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility). The ALJ's discussion demonstrates that, although he did not explicitly address every factor laid out in the regulations, he properly applied the rule, his reasoning is readily discernible, and his decision was supported by substantial evidence. See Judelsohn v. Astrue, 2012 WL 2401587, *6 (W.D.N.Y. June 25, 2012) ("Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record.").

**V.    Conclusion**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 13) is denied and the Commissioner's motion (Doc. 14) is granted. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                          **S/Michael A. Telesca**
                                      HON. MICHAEL A. TELESCA
                                      United States District Judge

Dated:     January 28, 2016
           Rochester, New York.